UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

CAROLYN HOWARD, HEIDI HAYE, SONYA SMITH, and WILLIAM HOWARD, JR.,

    Plaintiffs,

v.                                        Case No: 6:17-cv-1473-Orl-40GJK

RICHARD WILKINSON, RICHARD LEBLANC, RYAN WILSON, JAMES NELSON, JUAN PADILLA, PENELOPE GRAY, NANCY MENDOZA, RODNEY MARTIN, ANDREA DISTIN-CAMPBELL and ORANGE COUNTY FLORIDA,

    Defendants.
_____/

## ORDER

This cause comes before the Court on the following:

1. Defendant Orange County, Florida's, Motion to Dismiss Count Ten of Plaintiff's Complaint (Doc. 23), filed October 2, 2017;

2. Plaintiffs' Response to Defendant Orange County, Florida's Motion to Dismiss (Doc. 40), filed October 16, 2017;

3. Defendants Penelope Gray, Nancy Mendoza, Andrea Distin-Campbell, and Rodney Martin's Motion to Dismiss Parties and Counts Six, Seven, Eight, and Nine of the Complaint (Doc. 41), filed October 17, 2017;

4. Plaintiffs' Response to Defendants' Motion to Dismiss Counts Six Through Nine of the Complaint (Doc. 46), filed October 31, 2017;

5. Officer-Defendants Richard Wilkinson, Richard Leblanc, Ryan Wilson, James Nelson, and Juan Padilla's Motion to Dismiss (Doc. 44), filed October 24, 2017;

6. Plaintiffs' Response to Defendants Wilkinson, Leblanc, Wilson, Nelson, and Padilla's Motion to Dismiss (Doc. 47), filed November 7, 2017; and

7. Officer-Defendants' Reply to Plaintiffs' Response to Their Motion to Dismiss (Doc. 50), filed November 27, 2017.

With briefing complete, the matter is ripe for review.

## I. BACKGROUND[1]

This action centers on the death of William Howard ("Mr. Howard"). Mr. Howard died from injuries sustained while in the custody of correctional officers at the Orange County Jail (or the "Jail"), who broke Mr. Howard's neck while relocating him to a different cell within the Jail. His injuries went untreated for more than twenty-four hours, and at 9:10 a.m. on November 20, 2016, Mr. Howard was pronounced dead. His family brought this action, claiming wrongful death and § 1983 claims for Fourteenth Amendment violations, against Orange County, Florida, and various Jail employees.[2] Defendants deny any responsibility.

---

[1] This account of the facts is taken from Plaintiffs' Complaint (Doc. 1). The Court accepts these factual allegations as true when considering motions to dismiss. *See Williams v. Bd. of Regents*, 477 F.3d 1282, 1291 (11th Cir. 2007).

[2] The Complaint cites as Defendants five correctional officers and four nurses employed at the Jail. (Doc. 1.) The correctional officers are Richard Wilkinson, Richard Leblanc, Ryan Wilson, James Nelson, and Juan Padilla (collectively "Officer Defendants" or "Officers"). The nurses are Penelope S. Gray, Nancy Mendoza, Andrea L. Distin-Campbell, and Rodney Martin (collectively "Nurse Defendants"). This Order refers to individual Defendants as "Defendant [LAST NAME]."

The events leading to Mr. Howard's death began on November 16, 2016. On that day, Mr. Howard suffered a mental breakdown, when he returned home from an out-of-state funeral for his niece and her three children, who were brutally murdered. (Doc. 1, ¶ 17.) A domestic dispute unfolded and Mr. Howard was arrested for domestic violence and taken to the Orange County Jail. (*Id.*)

Mr. Howard was seventy-five years old at the time, and his initial medical screening at the Jail revealed that he had glaucoma. (*Id.* ¶ 18.) He was first placed in a standard cell for detainees, but was moved to a suicide prevention cell on November 18, 2016, after nurses observed him in an "agitated" state wandering around his cell. (*Id.* ¶¶ 19–20.) At 12:20 p.m., a licensed psychologist assessed Mr. Howard, and documented that he was disoriented, had an incoherent thought process, and was suffering from memory problems. (*Id.* ¶ 21.) Specifically, the psychologist described him as "very confused, and unable to answer questions in a reality based manner." (*Id.* ¶ 22.) Jail staff decided to return Mr. Howard to a psychological observation cell. (*Id.* ¶ 23.)

At 10:50 p.m., the Officer Defendants arrived to transport Mr. Howard. (*Id.* ¶¶ 23–24.) Gathering outside the cell, one officer mentioned to the others that Mr. Howard was "blind." (*Id.* ¶ 25.) After ordering him to approach the cell door to be handcuffed, the Officer Defendants banged loudly on the cell door to alert Mr. Howard as to the door's location. (*Id.* ¶¶ 24–25.) Mr. Howard failed to approach the door in response, so Defendant Padilla determined that force was necessary to remove him. (*Id.* ¶ 26.) They summoned Defendant Nelson to film the use of force. (*Id.* ¶ 27.)

---

Mr. Howard's children—Heidi Haye, Sonya Smith, and William Howard, Jr.—are also named Plaintiffs.

Before entering the cell, Defendant Padilla ordered Defendant Wilson to spray Mr. Howard with Oleoresin Capsicum ("pepper spray"). (*Id.* ¶ 28.) Defendant Wilson complied, pepper spraying Mr. Howard in the face through an opening in the cell door. (*Id.*) Coupled with his glaucoma, the pepper spray blinded Mr. Howard. (*Id.* ¶ 29.) Mr. Howard initially began to approach the cell door, but retreated amid the confusion. (*Id.* ¶ 30.) The Officers then entered the cell, where Mr. Howard was cowering in the corner. (*Id.* ¶ 32.) The officers then bombarded Mr. Howard with commands, one yelling "Don't move!" while another ordered, "put your hands behind your back!" (*Id.* ¶ 33.)

Next, the Officers grabbed Mr. Howard and pinned him against the wall. (*Id.* ¶ 34–35.) They did not handcuff him. Instead, the Officers then ripped Mr. Howard from the wall and slammed him down head first into the concrete floor, breaking his neck. (*Id.* ¶ 35.) They handcuffed him while he lay prostrate on the ground, and four Officers then grabbed and carried Mr. Howard to the psychological observation cell. (*Id.* ¶¶ 38–39.) While the Officers lugged his body, they let his head dangle beneath his shoulders without support. (*Id.* ¶ 39.) He could not hold it up on his own. (*Id.*) After arriving at the new cell, the Officers stripped Mr. Howard and left him naked on the floor. (*Id.* ¶ 40.) Upon completing the operation, Defendant Padilla congratulated the other officers on their work, telling them "good job." (*Id.* ¶ 41.)

Medical personnel at the Jail did not perform a medical assessment or treat Mr. Howard's injuries for more than twenty-four hours following the use of force, despite being on notice of the use of force, numerous pain complaints, and behavior indicating Mr. Howard was injured. (*Id.* ¶ 42.) The Nurse Defendants did, however, view and make perfunctory assessments of Mr. Howard in the hours following his injuries. (*Id.* ¶ 43.)

Defendant Martin was the registered nurse on duty at the Jail on the night of the use of force event. (*Id.* ¶ 49.) She was aware of the use of force, but did not perform or order a medical assessment of, or treatment for, Mr. Howard. (*Id.*) Defendant Mendoza visited Mr. Howard's cell twice in the immediate aftermath and noted that he was restless and allegedly pacing. (*Id.* ¶ 44.) The following morning, Defendant Mendoza observed Mr. Howard rolling side to side on the cell floor. (*Id.* ¶ 45.) Defendant Mendoza took no substantive action. Later that morning, Defendant Gray visited Mr. Howard's cell three times, observing him laying prone on the floor, complaining of neck and back pain. (*Id.* ¶ 46.) Defendant Gray returned in the late afternoon, documented Mr. Howard's continued neck and back pain complaints, and noted that he could move his extremities and turn his head. (*Id.* ¶ 47.) Again, no further action was taken. That evening, Defendant Distin-Campbell visited Mr. Howard's cell and observed him laying supine in his bunk. (*Id.* ¶ 48.)

At 9:52 p.m., a correctional officer found Mr. Howard unresponsive in his cell. (*Id.* ¶ 50.) He was taken to Orlando Regional Medical Center in critical condition, and pronounced the dead the following morning. (*Id.* ¶¶ 51–52.) An autopsy determined that Mr. Howard's cause of death was blunt force impact resulting in neck fracture with cervical spinal cord trauma and hypoxic encephalopathy. (*Id.* ¶ 53.) The medical examiner ruled Mr. Howard's death a homicide. (*Id.*) Following this ruling, Plaintiff brought this action.

The Complaint proceeds in thirteen Counts. Counts I through IV allege 42 U.S.C. § 1983 claims for excessive use of force against the Officer Defendants (apart from Defendant Nelson). Count V brings a § 1983 excessive force claim against Defendant Nelson—who filmed the use of force incident—premised on Defendant Nelson's deliberate indifference to the excessive use of force. Counts VI through IX assert § 1983

5

claims against the Nurse Defendants for their deliberate indifference to Mr. Howard's serious medical needs. Count X alleges a municipal liability claim against Orange County, Florida, for delegating final policymaking authority to the Nurse Defendants. Counts XI through XIII aver wrongful death claims against Orange County premised on (XI) battery, (XII) negligent hiring and retention, and (XIII) negligence.

All Defendants have separately moved to dismiss. (Docs. 23, 41, 44.)

## II. STANDARD OF REVIEW

A Rule 12(b)(6) motion to dismiss tests the legal sufficiency of the plaintiff's complaint. To survive the motion, the complaint must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible on its face when the plaintiff alleges enough facts to "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The mere recitation of the elements of a claim is not enough, and the district court need not give any credence to legal conclusions that are unsupported by sufficient factual material. *Id.* District courts must accept all well-pleaded allegations within the complaint and any documents attached thereto as true and must read the complaint in the light most favorable to the plaintiff. *Hunnings v. Texaco, Inc.*, 29 F.3d 1480, 1484 (11th Cir. 1994) (per curiam).

## III. DISCUSSION

### A. Orange County, Florida's, Motion to Dismiss

Defendant Orange County, Florida ("Orange County" or the "County"), moves to dismiss Count X of the Complaint. (Doc. 23.) Count X alleges a § 1983 municipal liability

claim against Orange County premised on the Nurse Defendants' deliberate indifference to Mr. Howard's serious medical needs. (Doc. 1, ¶¶ 54–56.)

Orange County makes two arguments for dismissal: (1) the Complaint fails to allege that Mr. Howard experienced a serious medical need, a prerequisite to a colorable deliberate indifference claim, and (2) the Complaint fails to allege that the Nurse Defendants were acting pursuant to an official policy or custom. (Doc. 23, pp. 4–7.)

*1.  Count X Adequately Pleads a § 1983 Deliberate Indifference Claim*

Count X alleges that Mr. Howard's Fourteenth Amendment rights were violated because the Nurse Defendants "acted with deliberate indifference to [Mr. Howard's] serious medical needs." (Doc. 1, ¶ 99).

Title 42 U.S.C. § 1983 confers a cause of action upon individuals whose federal or Constitutional rights are violated by persons acting under color of state law. In the context of a pretrial detainee facing a serious medical need, a Fourteenth Amendment violation occurs when state officials act with "deliberate indifference to [that] serious medical need[.]" *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *Cottrell v. Caldwell*, 85 F.3d 1480, 1490 (11th Cir. 1996). To state a claim, a pretrial detainee must allege (1) that she experienced a "serious medical need," (2) that a jail official acted with "deliberate indifference to her serious medical need," and (3) that the deliberate indifference caused the plaintiff's injury. *Goebert v. Lee Cty.*, 510 F.3d 1312, 1326 (11th Cir. 2007) (citations omitted).

The first prong is satisfied where the medical need "is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Id.* (quoting *Hill v. Dekalb*

*Reg'l Youth Det. Ctr.*, 40 F.3d 1176, 1187 (11th Cir. 1994)). The second prong requires a showing that the official acted with "deliberate indifference" to the detainee's serious medical need. *Id.* To do so, the "plaintiff must prove three things: (i) subjective knowledge of a risk of serious harm; (ii) disregard of that risk; (iii) by conduct that is more than gross negligence." *Id.* at 1327 (alterations accepted). The third prong requires a defendant be causally connected to the constitutional harm. *Id.*

Orange County challenges the second prong. (Doc. 23, pp. 4–5.) They contend that it was clear from the Nurses' observations that Mr. Howard could move his extremities and turn his head after the use of force. (*Id.*) The County characterizes Mr. Howard as "walking and talking" in the aftermath of the use of force. (*Id.* At p. 5.) Therefore, Orange County submits that Mr. Howard did not display a serious medical need to which County employees could have been deliberately indifferent. (*Id.*) This argument defies reason.

The Complaint plainly alleges a plausible deliberate indifference claim. It alleges that guards pepper sprayed and then slammed Mr. Howard—a seventy-five year old man—face first into a concrete floor and carried his limp body to a new cell. (Doc. 1, ¶¶ 28, 34–35.) The next day, the Nurse Defendants observed Mr. Howard in varying degrees of agony, yet they took no action to treat Mr. Howard or give him more than a cursory inspection. (*Id.* ¶¶ 43–49.) From these, the Complaint sufficiently alleges that Mr. Howard suffered a serious medical need. *See Goebert*, 510 F.3d at 1326; *see also Brown v. Hughes*, 894 F.2d 1533, 1538 n.4 (11th Cir. 1990) ("Evidence of recent traumatic injury . . . has generally been sufficient to demonstrate a serious medical need.").

The Complaint likewise establishes the Nurse Defendants' deliberate indifference to that need, insofar as it alleges (i) the Nurse Defendants knew of the serious medical

risks facing Mr. Howard (ii) and disregarded those risks (iii) by conduct that is more than gross negligence. [3] *See Goebert*, 510 F.3d at 1327.

### 2. Count X Adequately Pleads Municipal Liability

Next the County argues that the Complaint fails to state a basis for § 1983 municipal liability. These types of claims are hard to come by. A county government cannot be held liable under the doctrines of *respondeat superior* or vicarious liability for the constitutional wrongdoings of its employees or agents. *City of Canton v. Harris*, 489 U.S. 378, 385 (2007); *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978). Only those constitutional violations attributable to the local government's policymakers warrant liability. *Bd. of Cty. Comm'rs v. Brown*, 520 U.S. 397, 403–04 (1997). To recover against a municipality, a plaintiff must "identify a municipal 'policy' or 'custom' that caused [his] injury." *Gold v. City of Miami*, 151 F.3d 1346, 1350 (11th Cir. 1998).

This can be shown through the decisions of a final policymaker. The requisite policymaking authority to support a municipal liability claim "is necessarily the authority to make *final* policy." *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988). Delegation of authority to a subordinate to exercise discretion is sufficient to confer final policymaking authority if the subordinate's discretion is not constrained by official policies or subject to review. *Id.* at 124–28; *see also Mandel v. Doe*, 888 F.2d 783, 792 (11th Cir. 1989).

---

[3] In deciding whether an official's conduct was "more than gross negligence," the Eleventh Circuit regularly considers three additional factors: "(1) the seriousness of the medical need; (2) whether the delay worsened the medical condition; and (3) the reason for the delay." *Goebert*, 510 F.3d at 1327. In the Court's view, the allegations of the Complaint easily meet this heightened standard. *Cf. Lindley v. Birmingham*, 652 F. App'x 801, 805–06 (11th Cir. 2016).

Accepting the allegations of the Complaint as true, and viewing the Complaint in the light most favorable to Plaintiffs, Count X adequately pleads a basis for municipal liability against Orange County. The Complaint alleges that the County delegated final policymaking authority to the Nurse Defendants, whose discretion was not constrained by official policies or subject to review. Moreover, the Complaint's recounting of four separate Jail nurses visiting Mr. Howard as he lay dying in his cell, and failing to provide him medical care in the face of a patently obvious serious medical need, plausibly alleges a "custom" supporting municipal liability. Orange County's motion to dismiss is therefore due to be denied.

### B. Nurse Defendants' Motion to Dismiss

In their Motion, the Nurse Defendants contend that Heidi Haye, Sonya Smith, and William Howard Jr. lack standing to pursue individual capacity claims arising from Mr. Howard's death. (Doc. 41, pp. 4–5). Next, the Nurse Defendants claim entitlement to qualified immunity. (*Id.* at pp. 5–12).

#### 1. Mr. Howard's Children Lack Standing

The Nurse Defendants move to dismiss the § 1983 claims brought on behalf of Mr. Howard's children as precluded by Florida's Wrongful Death Act. (Doc. 41, pp. 4–5.) Plaintiffs counter that these limitations are inconsistent with § 1983 and should not be applied. (Doc. 46, p. 5.)

Florida's Wrongful Death Act ("FWDA") provides that any "action shall be brought by the decedent's personal representative, who shall recover for the benefit of the decedent's survivors and estate all damages, as specified in this act, caused by the injury resulting in death." Fla. Stat. § 768.20. "Similarly, this Court has held that 'a section 1983

cause of action is entirely personal to the direct victim of the alleged constitutional tort' and 'only the purported victim, or his estate's representative(s), may prosecute a section 1983 claim.'" *Christie v. Lee Cty. Sheriff's Office*, No. 2:10–CV–420–FtM–36DNF, 2011 WL 4501953, at *2 (M.D. Fla. Sept. 28, 2011) (quoting *Torres v. Orange Cty.*, No. CIVA6991662CIVORL-19B, 2000 WL 35527256, at *1 (M.D. Fla. May 16, 2000)).

Plaintiffs point out that Florida district courts are split on the issue,[4] and attempt to distinguish the cases cited by the Nurse Defendants. (Doc. 46, pp. 5–9.) The Court, however, agrees with the Middle District decisions applying the FWDA limitations to § 1983 claims,[5] and adopts their analysis on this issue. Accordingly, the individual capacity claims asserted by Mr. Howard's children—Heidi Haye, Sonya Smith, and William Howard Jr.—are dismissed.

2. *The Nurse Defendants Are not Entitled to Qualified Immunity*

The Nurse Defendants also move to dismiss the Counts alleged against them on the basis of qualified immunity. (Doc. 41, pp. 5–12.) Here, their arguments are not so successful. Qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or

---

[4] Plaintiffs identify a single case wherein a Florida district court refused to impose FWDA limitations to § 1983 claims. *See Heath v. City of Hialeah*, No. 80–399–CIV-WMH, 560 F. Supp. 840 (S.D. Fla. 1983). In advancing their arguments, the parties cite to numerous decisions from this District that reached the opposite conclusion, applying FWDA limitations to § 1983 claims. *See* note 6, *infra*.

[5] *See, e.g.*, *Estate of Breedlove v. Orange Cty. Sheriff's Office*, No. 6:11–cv–2027–Orl–31KRS, 2012 WL 2389765, at *3–4 (M.D. Fla. June 25, 2012); *Christie v. Lee Cty. Sheriff's Office*, No. 2:10–CV–420–FtM–36DNF, 2011 WL 4501953, at *2 (M.D. Fla. Sept. 28, 2011); *Torres v. Orange Cty.*, No. CIVA6991662CIVORL-19B, 2000 WL 35527256, at *1 (M.D. Fla. May 16, 2000); *see also Sharbaugh v. Beaudry*, 267 F. Supp. 3d 1326, 1335 (N.D. Fla. 2017).

constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). To receive qualified immunity, a government official "must first prove that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred." *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002) (internal quotation marks omitted). Plaintiffs do not dispute this first step. (Doc. 46, p. 9.)

"Once the defendant establishes that he was acting within his discretionary authority, the burden shifts to the plaintiff to show that qualified immunity is not appropriate." *Lee*, 284 F.3d at 1194. To do so, the plaintiff must make a two-part showing. First, the plaintiff must allege that the facts of the case, if proven to be true, would make out a constitutional violation. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009); *Beshers v. Harrison*, 495 F.3d 1260, 1265 (11th Cir. 2007). Second, the plaintiff must allege that the constitutional right was "clearly established" at the time of the alleged misconduct. *Pearson*, 555 U.S. at 232. Because qualified immunity provides a complete defense from suit, "courts should ascertain the validity of a qualified immunity defense as early in the lawsuit as possible." *Gilmore v. Hodges*, 738 F.3d 266, 272 (11th Cir. 2013). With regard to Plaintiff's two-part showing, the Nurse Defendants only dispute whether the Complaint alleges a constitutional violation. (Doc. 41, p. 6.)

In the course of finding that the Complaint adequately alleged municipal liability against Orange County in Section III.A.1., *supra*, the Court found that the Complaint adequately alleged viable Fourteenth Amendment deliberate indifference claims against the Nurse Defendants. The undersigned will not retread ground covered *supra*. Therefore, the Plaintiff has met the burden of showing that qualified immunity as to the Nurse

Defendants is inappropriate. Like before, the Complaint alleges a plausible deliberate indifference claim, a Fourteenth Amendment violation, against the Nurse Defendants. The Nurse Defendants' motion to dismiss based on qualified immunity is thus due to be denied.

### C.     Officer Defendants' Motion to Dismiss

The final group of Defendants—the Officers—also move to dismiss based on qualified immunity. (Doc. 44.) The Officer Defendants claim that (i) Mr. Howard's constitutional rights were not violated, and (ii) their conduct was not proscribed by clearly established law. (*Id.* at pp. 4–9.) Their motion is due to be denied.

*1.     The Officer Defendants Violated Mr. Howard's Constitutional Rights*

Plaintiffs allege excessive force claims against the Officer Defendants. (Doc. 1, ¶¶ 54–68.) To establish a viable excessive force claim, a plaintiff must demonstrate that the use of force was "objectively unreasonable." *Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2473 (2015). "[O]bjective reasonableness turns on the 'facts and circumstances of each particular case.'" *Id.* (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)). Courts making such determinations must view the facts "from the perspective of a reasonable officer on the scene, including what the officer knew at the time, not with the 20/20 vision of hindsight." *Id.* Courts must also credit the government's need to manage the facility where an individual is detained, and defer to policies and practices that jail officers believe are needed to preserve order, discipline, and security. *Id.*

> Additional factors to consider include:
>
> [T]he relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem

at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting.

*Id.* In their Motion, the Officer Defendants argue that the use of force was objectively reasonable, "and proportional to the Officers' need to move" Mr. Howard to a new cell. (Doc. 44, pp. 4–8.) The Court disagrees.

First, the amount of force used grossly exceeded the need. Defendants' characterization of Mr. Howard as unstable and unpredictable thus necessitating considerable force overlooks critical facts: Mr. Howard was a seventy-five year old man afflicted with glaucoma, and by the time Mr. Howard was seized and slammed to the ground, he had been blinded by pepper spray. These facts were known by the Officer Defendants. Further, the Officers who slammed Mr. Howard to the ground were all large men, weighing more than two hundred pounds, while Mr. Howard was considerably smaller. Defendants' contention that the facts and circumstances justified the Defendants in slamming Mr. Howard to the ground with enough force to break the seventy-five year old's neck is appalling.

Second, the extent of Mr. Howard's injury is "obviously significant," (Doc. 44, p. 7), and militates heavily in favor of finding that the force used was objectively unreasonable. The Officer Defendants' assertion that "a broken bone is not an objectively unreasonable result from noncompliance with official directives" is stunning. (*Id.*) Sure, broken bones can result from forceful interactions with law enforcement, but not all broken bones are alike. A broken neck is a debilitating, life-threatening injury to anyone, even an able-bodied man, but especially to seventy-five-year-old Mr. Howard. Furthermore, the Complaint alleges that Mr. Howard was unable to understand or obey the initial commands to come to the door. At bottom, the position espoused by the Officer

Defendants on this factor is that Mr. Howard's confused noncompliance justified a death sentence. The Court rejects this callous contention.

Third, in light of the circumstances, attempts to limit force weighs against the Officer Defendants. Though the Officer Defendants verbally commanded Mr. Howard to walk to the door to be moved, their commands went unheeded because of Mr. Howard's disoriented state and glaucoma. The Officer Defendants' subsequent actions showed less restraint. They pepper sprayed Mr. Howard, then four large officers rushed and pinned him against the wall. Then, instead of cuffing him immediately, they slammed him face first into the concrete floor. Considering all the facts and circumstances, this factor also weighs against the Officer Defendants.

The remaining three factors weigh in favor of finding the force used objectively unreasonable. The security problem at issue, a disoriented and partially blinded seventy-five year old man acting erratically, cannot fairly be characterized as "severe." For similar reasons, it strains common sense to believe that four large Officers perceived a significant threat from Mr. Howard, as he was cowering in the corner when the Officers entered his cell. Finally, the Complaint does not allege that Mr. Howard was actively resisting; instead it paints a picture of a blind, confused detainee who was incapable of complying with the Officers' commands because of his mental state.

Unquestionably, the Complaint establishes that the Officer Defendants violated Mr. Howard's Fourteenth Amendment rights based on the excessive use of force against him. The Court now turns to the question of whether the right violated was "clearly established."

*2.  The Officer Defendants Violated a Clearly Established Right*

The Officer Defendants next argue that there "was no clearly established law proscribing a takedown of a resisting detainee." (Doc. 44, p. 8.) They insist that, in the aftermath of the *Kingsley* decision clarifying the elements of a Fourteenth Amendment excessive force claim, there was "a dearth of on-point factual law in the pretrial detainee context" informing officers of what they can and cannot do. (*Id.*). That is, in the absence of opinions applying *Kingley* in factually similar cases, there was no "clearly established" use of force law the Officer Defendants could have violated. This argument is, of course, absurd.

"For a constitutional right to be clearly established, its contours 'must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" *Hope v. Pelzer*, 536 U.S. 730, 739 (2002) (quoting *Anderson v. Creignton*, 483 U.S. 635, 640 (1987)). Even in novel factual circumstances, "officials can still be on notice that their conduct violates established law . . . ." *Id.* at 741 (rejecting a requirement that previous cases have "materially similar" facts to give officials notice). So a right can be clearly established before a Court speaks directly to the precise factual circumstances. At the time of the incident, the Eleventh Circuit had firmly established the right of a non-resisting individual to (i) be free from being pepper sprayed gratuitously, and (ii) not be slammed head first into a hard floor. *See Thomas v. Bryant*, 614 F.3d 1288, 1312 (11th Cir. 2010); *Slicker v. Jackson*, 215 F.3d 1225, 1233 (11th Cir. 2000).

Furthermore, the Officer Defendants overstate the "upheaval" in use of force caselaw occasioned by the Supreme Court's decision in *Kingsley*. (Doc. 44, p. 8.) That case merely eliminated the requirement imposed by several Circuit Courts—including the

Eleventh—that plaintiffs prove an officer's subjective awareness that their use of force was unreasonable to make out an excessive force claim. *Kingsley*, 135 S. Ct. at 2472–76. It did not otherwise abrogate the decisional excessive force law in this Circuit. In light of the continued viability of excessive force cases pre-dating *Kingsley*, a reasonable official occupying the Officer Defendants' position would understand that their actions violated Mr. Howard's Fourteenth Amendment rights. *See Thomas*, 614 F.3d at 1312; *Lee v. Ferraro*, 284 F.3d 1188, 1197–98 (11th Cir. 2002); *Slicker*, 215 F.3d at 1232–33. This conclusion is fortified by the extreme force alleged in the Complaint and lack of a compelling justification to use such force.[6]

The Officer Defendants assert that they have distinguished the *Lee/Slicker* line of cases—involving "restrained, compliant, and non-resisting suspects on the street"—cited by Plaintiff to establish the excessive that the Officer Defendants violated a clearly established right, therefore those cases should not be considered. (Doc. 50, p. 4.) Defendants would do well to remember the present stage of proceedings. In weighing a motion to dismiss, the Court is obliged to accept all well-pleaded factual allegations as

---

[6] It is worth noting that the allegations of the Complaint might plausibly state a claim for excessive use of force under the pre-*Kingsley* Eleventh Circuit law, which required that officials act "maliciously and sadistically to cause harm." *Fennell v. Gilstrap*, 559 F.3d 1212, 1217 (11th Cir. 2009). In such an inquiry, *Fennell* instructed courts to consider factors similar to the *Kingsley* factors. *Id.* ("[1] the need for the application of force; [2] the relationship between the need and the amount of force that was used; [3] the extent of the injury inflicted upon the prisoner; [4] the extent of the threat to the safety of staff and inmates; and [5] any efforts made to temper the severity of a forceful response.").

That is to say, even under pre-*Kingsley* law (which was more favorable to officer-defendants), reasonable officials in the Officer Defendants' shoes would have been on notice that their conduct violated Mr. Howard's Fourteenth Amendment rights. The Court therefore has no difficulty finding that they would have been on notice post-*Kingsley*.

true, and read the complaint in the light most favorable to the plaintiff. Requests by the Officer Defendants that the Court read the Complaint in a light favorable to the defendant, while making numerous inferences adverse to the plaintiff based on self-serving statements by the defendants, are not well-taken. The Plaintiffs have met their burden of establishing that the Officer Defendants are not entitled to qualified immunity.

### 3. The Complaint States a Plausible Failure to Intervene Claim Against Defendant Nelson

Finally, Defendants argue that the Complaint fails to state a plausible "failure to intervene" claim against Defendant Nelson—who filmed the use of force against Mr. Howard[7]—because he never "had a fair opportunity to jump in and prevent the 'slam' during the rapidly unfolding series of events." (Doc. 44, pp. 9–10.) Plaintiff counters that Defendant Nelson had multiple opportunities to intervene and prevent the "well-telegraphed use of force by the other Officers." (Doc. 47, p. 11.) The Court agrees with Plaintiffs.

"[A]n officer who is present at the scene and who fails to take reasonable steps to protect the victim of another officer's use of excessive force, can be held liable for his nonfeasance." *Skrtich v. Thornton*, 280 F.3d 1295, 1301 (11th Cir. 2002). In *Priester v. City of Riviera Beach*, 208 F.3d 919 (11th Cir. 2000), the Eleventh Circuit reversed a district court's grant of judgment as a matter of law to an officer-defendant who failed to intervene when an officer in his presence directed his dog to attack a non-resisting suspect. 208 F.3d at 924–25. There, the officer who failed to intervene watched the canine

---

[7] (Doc. 1, ¶ 27.) Defendant Nelson's liability is premised on his failure to intervene to stop the Officer Defendants' excessive use of force. (*Id.* ¶ 37.)

use of force from nearby, and maintained "voice contact" with the other officer. *Id.* at 923–25. The plaintiff in *Priester* testified that the attack lasted longer than two minutes, which the Eleventh Circuit found was enough time to intervene by ordering the other officer restrain the dog. *Id.* at 925.

Applying *Priester* here, the Complaint states a plausible failure to intervene claim against Defendant Nelson. Although the Complaint does not allege how long the use of force against Mr. Howard lasted, the Complaint plausibly shows that the incident lasted long enough for Defendant Nelson to intervene. That is because the use of force complained of is not solely the slam of Mr. Howard into the concrete. Rather the Officer Defendants began by pepper spraying Mr. Howard after he failed to come to the door to be handcuffed. Next, they rushed Mr. Howard and pinned him against the wall. The Officers then pulled him from the wall and slammed him to the ground. Finally, Mr. Howard was handcuffed and carried out of the cell, his neck dangling from his shoulders without support. As in *Priester*, "the events happened very quickly," however the use of force here lasted long enough for Defendant Nelson to intervene. By instead filming, Defendant Nelson allowed the unconstitutional actions to take place. Accordingly, the Complaint states a plausible failure to intervene claim against Defendant Nelson. *See also Priester*, 208 F.3d at 927–28 (finding the defendant who failed to intervene was not entitled to qualified immunity where the excessive force was "obvious," and when the defendant "had the time and ability to intervene, but . . . did nothing").

## IV.   CONCLUSION

For the aforementioned reasons, it is **ORDERED AND ADJUDGED** as follows:

1. Defendant Orange County, Florida's, Motion to Dismiss Count Ten of Plaintiff's Complaint (Doc. 23) is **DENIED**.

2. Defendants, Penelope Gray, Nancy Mendoza, Andrea Distin-Campbell, and Rodney Martin's Motion to Dismiss Parties and Counts Six, Seven, Eight, and Nine of the Complaint (Doc. 41) is **GRANTED IN PART** and **DENIED IN PART**.

    a. Plaintiffs, Heidi Haye, Sonya Smith, and William Howard Jr., in their individual capacities are **DISMISSED** from this action.

    b. In all other respects, the Motion is **DENIED**.

3. Officer-Defendants Richard Wilkinson, Richard Leblanc, Ryan Wilson, James Nelson, and Juan Padilla's Motion to Dismiss (Doc. 44) is **DENIED**.

4. Defendants shall answer the Complaint no later than **April 16, 2018**.

**DONE AND ORDERED** in Orlando, Florida, on April 2, 2018.

PAUL G. BYRON
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties