**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**CAROLYN HOWARD, individually and**
**as personal representative of the estate**
**of WILLIAM HOWARD;**

      **Plaintiff,**

vs.                           Case No.: 6:17-cv-01473-PGB-GJK

**RICHARD WILKINSON, individually;**
**RICHARD LEBLANC, individually;**
**RYAN WILSON, individually;**
**JAMES NELSON, individually;**
**JUAN PADILLA, individually;**
**PENELOPE GRAY, individually;**
**NANCY MENDOZA, individually;**
**RODNEY MARTIN, individually;**
**ANDREA DISTIN-CAMPBELL, individually; and**
**ORANGE COUNTY, FLORIDA**

      **Defendants.**

---

**PLAINTIFF'S OMNIBUS MOTION IN LIMINE**

Plaintiff, Carolyn Howard, by and through undersigned counsel, and pursuant to this Court's Case Management and Scheduling Order (Doc. 52) and Amended Case Management and Scheduling Order (Doc. 71) file these motions in limine regarding evidence Plaintiff seeks to exclude or present at trial. In support thereof she states as follows:

1. This action is scheduled for trial during the trial term beginning June 3, 2019 (Doc. 52 at 2).

2. On April 11, 2019, in accordance with M.D. Fla. R. 3.06 and the Amended Case Management and Scheduling Order (Doc. 71), the attorneys met to prepare the pretrial stipulation and exchange exhibit and witness lists.

3.	Having reviewed the Defendants' Exhibit List and Witness List, there are several pieces of evidence Plaintiff seeks to exclude in limine. Furthermore, Plaintiff seeks to recover hedonic damages on behalf of William Howard Sr. (hereinafter "Howard)—which implicates an undecided issue within the Eleventh Circuit that Plaintiff submits is better addressed prior to trial.

4.	The Court's Case Management and Scheduling Order and Amended Case Management and Scheduling Order instruct the parties to raise all motions in limine through a single filing not to exceed twenty-five pages without leave of court. (Doc. 71; Doc. 52).

5.	As such, Plaintiff requests the following relief via this omnibus motion in limine:

   (i)	To exclude the testimony of Orange County Sheriff Deputies, their arrest report, and body-cam footage showing the events leading up to Howard's arrest. This evidence is impermissible propensity evidence barred by Rule 404, unduly prejudicial, and unduly cumulative. Further, the body-cam videos were not timely disclosed.

   (ii)	To exclude medical records of Carolyn Howard reflecting treatment of her injuries from the events leading to Howard's arrest, for the same reasons as the previous motion and also because such evidence violates Ms. Howard's right to privacy and has no relevance toward her claims for damages.

   (iii)	To permit Plaintiff to seek hedonic damages for Howard's loss of enjoyment of life. Even though such damages are barred by Florida's Wrongful Death Act, state law does not control the measure of damages in § 1983 claims. Furthermore, the underlying purpose behind § 1983 supports permitting recovery of hedonic damages under the facts of this case.

    (iv)    To exclude any testimony, inference, or argument of benevolent gestures or expression of being sorry for Mr. Howard's death, as such comments are irrelevant and unduly prejudicial.

    (v)    To exclude any testimony, inference, or argument regarding the jury's verdict being paid through tax dollars, as such comments are irrelevant and unduly prejudicial.

    (vi)    To exclude any testimony, inference, or argument regarding the financial wherewithal of the Defendants or the fact that the Defendants are personally responsible for paying the judgment, as such comments are irrelevant and unduly prejudicial.

6.    Pursuant to Local Rule 3.01(g), the undersigned have conferred with counsel for all parties on each of the parties on each of these motions. Defendant Orange County opposes all motions. The Nurse Defendants do not oppose motions iv and v, but oppose motions i, ii, iii, and vi. The Officer Defendants do not oppose motion v, but oppose motions i, iii, iii, iv, and vi.

WHEREFORE, Plaintiff respectfully requests that this Court to grant the relief described above.

## MEMORANDUM OF LAW

A motion in limine presents a pretrial issue of admissibility of evidence that is likely to arise at trial, and as such, the order, like any other interlocutory order, remains subject to reconsideration by the court throughout the trial. *See Stewart v. Hooters of Am., Inc.*, No. 8:04-cv-40-T-17-MAP, 2007 WL 1752843, at *1 (M.D. Fla. June 18, 2007) (citation omitted). "The real purpose of a motion in limine is to give the trial judge notice of the movant's position so as

to avoid the introduction of damaging evidence, which may irretrievably effect the fairness of the trial." *Id.*

I. **Arrest Report and Video Recordings of Howard's Arrest**

The instant dispute arises out of Orange County Jail staff's use of force and failure to provide medical care while Howard was detained at the Orange County jail. Howard suffered a mental breakdown after returning from the funeral for his niece and three nephews, who were the victims of a brutal murder. Howard was subsequently arrested for an aggravated battery he committed on his wife. The parties do not dispute that this incident occurred, and Plaintiff has no objection to the witnesses referencing that the reason Howard was in jail was an aggravated battery he committed on his wife.

However, Defendants' Joint Exhibit List includes five videos taken from body cam footage of Mr. Howard's arrest. (Doc. 109-2 at 1, 3; Ex. 1; 15–19). Their witness list also includes three Orange County Sheriff's Deputies who arrested Mr. Howard: Deputy Frank Tagler, Deputy John Tran, and Deputy Devin Turner. (Doc. 109-5 at 11). Plaintiff expects that Defendants will seek to introduce these exhibits to provide a detailed account of the events leading up to Mr. Howard's arrest. Plaintiff contends that introducing this extrinsic evidence relating to the events precipitating the arrest—which are not at issue in this case—are inadmissible, cumulative, and unfairly prejudicial. For the reasons stated below, such evidence is not admissible to defend Plaintiff's claims.

A. **The Video Recordings and Description of Howard's Arrest Are Not Admissible to Prove that Howard Resisted During the Use of Force Described in the Complaint.**

The Federal Rules of Evidence prohibit using a party's prior crimes, wrongs, or other acts to infer that person had a propensity to commit the same or similar acts in the case at bar. Specifically, Rule 404 provides in relevant part that: "evidence of a crime, wrong or other act is

4

not admissible to prove a person's character in order to show that on a particular occasion a person acted in accordance with the character." Fed. R. Evid. 404(b)(1).

In the criminal context, the exclusion of bad acts evidence is "founded not on a belief that the evidence is irrelevant, but rather on a fear that juries will tend to give it excessive weight." *United States v. Daniels*, 770 F.2d 1111, 1116 (D.C. Cir. 1985). "That juries treat prior convictions as highly probative has been confirmed by empirical investigations." *Id.* The danger of such prejudice is particularly great where the activity was not the subject of a conviction as "the jury may feel that the defendant should be punished for that activity even if he is not guilty of the offense charged." *United States v. Ridlehuber*, 11 F.3d 516, 521 (5th Cir. 1993).

In civil cases, such as this one, the Rules proscribe the use of character evidence to an even greater degree, prohibiting such inferences from being drawn altogether. In 2006, Rule 404 was amended to clarify that, in a civil case, evidence of a person's character is "never admissible to prove that the person acted in conformity with that character trait." Fed. R. Evid. 404 Advisory Committee Note; 2006 Amendments. "The amendment is consistent with the original intent of the Rule, which was to prohibit the circumstantial use of character evidence in civil cases, even where closely related to criminal charges." *Id.*

As such, courts have routinely rejected the use evidence of prior violent acts to demonstrate a party acted violently in excessive force cases. *See Luka v. City of Orlando*, 382 Fed. Appx. 840, 842 (11th Cir. 2010) (holding officers' sixty-nine prior excessive force complaints were not admissible to prove officer used excessive force on plaintiff, where the City had been dismissed from case at summary judgment); *Luke v. Brown*, 1:05-cv-246; 2007 WL 4730648, *4 (N.D. Ga. 2007) (excluding plaintiff's prior convictions, including those for battery, on the grounds that they

were inadmissible character evidence and not relevant to the issue of whether the officer's actions were objectively reasonable on night of the shooting).

Here, the evidence of Howard's actions leading up to his arrest may not be used to infer that he had a violent character and acted on such a character trait during the use of force at issue here. Indeed, even if such evidence was admissible, the type of resistance the Officers claimed Howard exhibit during the use of force was of a completely nature than the crime that led to his arrest. Howard was arrested for an aggravated battery arising from a stabbing. However, during the use of force and in the events leading up to it, the Officers agreed Howard was not hurting himself, kicking the walls, damaging jail property, or engaging in any other types of aggressive behavior. (LeBlanc Depo at 114–115; Wilson Depo at 50; Nelson Depo at 63).

Further, once the Officers entered the cell, Howard never tried to strike, lunge, or kick any of the officers. (LeBlanc Depo at 116–117). The only resistance that the Officers who applied the takedown described was that Howard "tensed his muscles" and attempted to pull his arms away when they tried to grab him. (Wilson Depo at 58; LeBlanc Depo at 129; Wilkinson Depo at 56). In other words, the behavior that resulted in Howard's arrest was an aggressive and violent act, whereas the alleged behavior that the Officers allege Howard engaged during the use of force was merely failing to follow commands and failing to comply with their physical attempts to restrain him.  As such, Howard's arrest and the events leading up to it are neither probative nor permissible for establishing that Howard resisted the officers' commands during the use of force.

> **B.     The Video Recordings and Description of Howard's Arrest Are Cumulative and Unduly Prejudicial.**

Even evidence that is relevant and admissible under other rules may be excluded under Rule 403. This rule, in pertinent part, provides that:

> The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the

6

> following: <u>unfair prejudice</u>, confusing the issues, misleading the jury, <u>undue delay, wasting time, or needlessly presenting cumulative evidence</u>.

Fed. R. Civ. P. 403 (emphasis added).

Given that the parties agree Howard was arrested for committing an aggravated battery with a deadly weapon, proving up these events with extrinsic evidence is unnecessary and presents a substantial danger of unfair prejudice. As discussed above, even if offered for an admissible purpose, there is a great danger that the jury will use evidence of prior bad acts to make impermissible propensity inferences. Furthermore, allowing video recordings and the arrest report into evidence would be cumulative and create a wasteful "mini-trial" in a case that is already complex. Indeed, if all of the Defendants' exhibits were admitted, the jury would see more videotapes of Howard's arrest than the use of force actually at issue in the case.

On the other side of the coin, the probative value of this evidence is not particularly high. The arrest report and video tapes are not probative toward showing the Officers' state of mind. Defendant Padilla, the supervisor who instructed the Officers to use force on Howard, testified that he did not become aware of the circumstances surrounding Howard's arrest until after the fact when he wrote his report. (Padilla Depo Vol II at 23). To the extent other officers may have been aware of these incidents, they certainly would not have viewed all of the videos of that arrest prior to the use of force.

Any relevant information regarding the Officers' state of mind can be explained through the Officers' own testimony regarding what they knew about Howard's arrest at the time of the use of force. Presenting extrinsic evidence and witnesses that the Officers did not have access to at the time is not probative to the Officers' state of mind and presents needless danger that such evidence will be used by the jury to make forbidden propensity inferences. *See e.g., MacMillan v. Roddenberry*, 432 Fed. Appx. 890, 896 (11th Cir. 2011) (permitting evidence of inmate's prior

7

violent offense was admissible to show deputies' state of mind where "testimony was limited to one comment each, no effort was made to explore the foundation of the comments, and the district court explained to the jury that the purpose was limited to state of mind.")

Likewise, the arrest report and video tapes are not probative toward diminishing the value of the estate's wrongful death damages, because the parties largely agree that the events they depict occurred. For one, using this isolated event in the Howards' lengthy marriage to argue that Howard would have acted violently toward his wife in the future is essentially a forbidden propensity argument. "[T]hat some aspects of a decedent's character may properly be shown in determining the damages to be awarded in a wrongful death action does not mean, however, that all his habits and qualities are relevant." *St. Clare v. Eastern Air Lines, Inc.*, 279 F.2d 119 (2d Cir. 1960) (holding evidence of decedent's past infidelity was impermissible character evidence in wrongful death case because details of his personal life were not at issue); *Johnson v. Dobrosky*, 902 A.2d 238 (N.J. 2006) (evidence of prior fraud conviction not admissible to diminish value of lost advice, guidance or counsel of deceased parent in wrongful death case).

Further, by the time Howard was detained at Orange County jail—while still disoriented—he longer exhibited any aggressive behavior. (LeBlanc Depo at 114–115; Wilson Depo at 50; Nelson Depo at 63). Immediately after the arrest, Howard was reported to have expressed concern for the wellbeing of his wife, often asking if she was okay. During his detainment, Officers heard Howard saying his wife's name in his cell. (Padilla Depo Vol II at 163). Immediately following the use of force that proved to be fatal, Howard can be heard crying out "Carolyn! I'm dead." (Handheld camera at 4:30). Therefore, any use of this event as a basis to argue that Howard would have continued to be violent toward his wife if he had survived would be speculation unsupported

8

by his conduct during the prior 47 years of their marriage or Howard's behavior following his arrest. As such, this evidence should be excluded.

### C. Defendants Did Not Timely Disclose the Body Cam Videos of Howard's Arrest.

If a party fails to comply with its discovery obligations under Rule 26(a) or 26(e), the information or witness testimony may be excluded pursuant to Rule 37(c)(1). Fed. R. Civ. P. 37(c). This Rule provides, in pertinent part, that:

> If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless.

Pursuant to this Court's Amended Case Management and Scheduling Order, the discovery deadline in this case was January 2, 2019. (Doc. 71 at 2). Plaintiffs did not receive the body cam videos or notice that Defendants intended to rely on these videos until the meeting in person to prepare the Joint Final Pretrial Statement on April 11, 2019.

This late disclosure is not substantially justified. The video recordings were taken by deputies of the Orange County Sheriff's Office. The County has had the ability to access to them since Howard's arrest. Furthermore, the late disclosure of the video recordings and Defendants' intent to rely on them is not harmless. Plaintiffs have not had an opportunity to depose the deputies who took the body cam footage or discover any documents pertaining to Howard's arrest— which is a wholly separate event from the use of force and failure to provide medical care at issue in this case. Therefore, the body cam footage must be excluded under Rule 37(c).

### II. Medical Records of Carolyn Howard

Defendants include on their Exhibit List medical records of Carolyn Howard from Orlando Regional Medical Center and Orlando Orthopedic Center. (Doc. 109-2 at 5, Ex. 21 and 22). The

9

Orlando Regional Medical Center records show treatment that Carolyn Howard received following the incident that led to Howard's arrest. The Orlando Orthopedic Center records document a single therapy session and office visits that Carolyn Howard received in March and April 2017 for a cut on her left hand with a knife—presumably also arising from the incident giving rise to Howard's arrest.

For the reasons discussed in the above motion, this evidence is not admissible under Rule 403, and 404 to provide further description of Howard's arrest. Furthermore, the evidence is not probative toward disproving Carolyn Howard's damages, as she is not claiming any damages for physical injuries. (Doc. 109 at 15). Furthermore, the admission of these records would cause greater prejudice to Carolyn Howard, as it would present to the jury private medical information for injuries that are not at issue in this case. *See Weaver v. Myers,* 229 So.3d 1118, 1132 (2017) ("Although a claimant may necessarily waive privacy rights to the medical information that is relevant to a claim by filing an action, this does not amount to waiver of privacy rights pertaining to all confidential health information that is not relevant to the claim."). For these reasons and those articulated in the previous motion in limine, Carolyn Howard's medical records should be excluded.

### III.   Hedonic Damages

Hedonic damages are "damages awarded for the deprivation of the pleasure of being alive." Bryan A. Garner, *Garner's Dictionary of Legal Usage* 405 (3rd Ed. 2011). These types of damages are not compensable under Florida's Wrongful Death Act, which only provides for recovery of net accumulations of the estate and damages for the decedent's survivors. *See* §768.19 Fla. Stat. (2018). However, the Eleventh Circuit has held that state wrongful death statutes do not control

the measure of damages that should be awarded to a Plaintiff. *Gilmere v. City of Atlanta*, 864 F.2d 734, 740 (11th Cir. 1989).[1]

In *Gilmere,* the Eleventh Circuit aptly explained the reasoning for why state wrongful death measures of damages are not consistent with § 1983 and § 1988:

> Compensatory damages for deprivation of a federal right are governed by federal standards, as provided by Congress in 42 U.S.C. § 1988...." *Sullivan v. Little Hunting Park, Inc.,* 396 U.S. 229, 239, 90 S.Ct. 400, 406, 24 L.Ed.2d 386 (1969). The Supreme Court has construed § 1988 to mean that "both federal and state rules on damages may be utilized, whichever better serves the policies expressed in the federal statutes." *Id.* at 240, 90 S.Ct. at 403, 24 L.Ed.2d 386. The district court's task is to "adapt [ ] common-law rules of damages to provide fair compensation for injuries caused by the deprivation of a constitutional right." *Carey,* 435 U.S. at 258, 98 S.Ct. at 1049, 55 L.Ed.2d 252.
>
> Federal law provides for compensation for injuries caused by a constitutional deprivation, *Stachura,* 477 U.S. 299, 106 S.Ct. 2537, 91 L.Ed.2d 249, and allows the imposition of punitive damages even in cases where such recovery may not be made under state law. *Smith v. Wade,* 461 U.S. 30, 103 S.Ct. 1625, 75 L.Ed.2d 632 (1983). The courts are charged with the duty of evaluating the principles of damages which have evolved within the common-law and fashioning a remedy appropriate to the injury.
>
> The dissent argues that by not applying the state measure of damages for wrongful death, we are casting the district courts to sea without an anchor and are inviting arbitrary, subjective valuations of human life. We disagree. Although the principles of compensation may be difficult to apply to particular cases, as the Supreme Court has recognized, courts "are capable of making the types of judgment concerning causation and magnitude of injury necessary to accord meaningful compensation for invasion of [constitutional]

---

[1] While the relationship between § 1988 and Florida's Wrongful Death Act was briefed and ruled on in the County's Motion to Dismiss and Nurse's Motion to Dismiss, it arose in the context of Howard's adult children's standing to bring claims for Howard's death. (*See* Doc. 60). The issue of hedonic damages has not been addressed in this case and is better supported by the authority discussed in the briefing on those motions. Furthermore, since this Court ruled on those motions, at least one other decision has been issued that refused to apply Florida's Wrongful Death Act's measure of damages to §1983 plaintiffs. See *Sheffield v. Greene,* 2018 WL 492532, *2 (M.D. Fla. May 17, 2018).

> rights." *Carey,* 435 U.S. at 259, 98 S.Ct. at 1050, 55 L.Ed.2d 252 quoting *Bivens v. Six Unknown Fed. Narcotics Agents,* 403 U.S. 388, 409, 91 S.Ct. 1999, 2011, 26 L.Ed.2d 619 (1971) (Harlan, J., concurring in judgment).
>
> Furthermore, applying a federal standard of damages for injuries suffered by a decedent will promote consistency in the type and amount of damages awarded. Were we to follow the dissent's rule and award the damages provided in the state wrongful death statute, there would be three separate measures of damages for the unconstitutional deprivation of life in this circuit: the damages permitted by the wrongful death statutes of Alabama, Florida and Georgia Under that scenario, it is not inconceivable that a plaintiff in one state would be awarded substantially more damages under her state's wrongful death statute than another plaintiff who happens to live in a state with a different measure of damages for wrongful death. Such a result would not only lead to inconsistent awards, it could be prohibited by § 1988.
>
> For the above-stated reasons, we hold that the district court did not err in refusing to award the state wrongful death measure of damages to compensate for the violation of the decedent's constitutional rights.

*Id.* at *739*–40.

The Eleventh Circuit has not explicitly applied § 1983 to Florida's Wrongful Death Act. District courts have divided over the issue. *Compare Heath v. City of Hialeah*, 560 F. Supp. 840 (S.D. Fla. 1983) (finding Florida's Wrongful Death Act inconsistent with the purpose of § 1983 and applying federal common law); *Sheffield v. Greene,* 2018 WL 492532, *2 (M.D. Fla. May 17, 2018) (denying motion to exclude hedonic damages in § 1983 claim because the Eleventh Circuit has rejected the argument that damages in §1983 claims involving a death must be based on a State's wrongful death statute) *with Torres v. Orange County, Fla.*, 2000 WL 35527256 (M.D. Fla. May 16, 2000) (applying the limitations of Florida's wrongful death act to a §1983 claim); *Scharbraugh v. Beudry*, 2017 WL 3013265 (N.D. Fla. July 14, 2017) (same).

In *Heath*, the court allowed a § 1983 plaintiff who was shot and killed by police officers to recover damages that were not compensable under Florida's Wrongful Death Act. The court noted that § 1983 was enacted to protect the people from unconstitutional state action, and that the remedies available to the plaintiff's estate in that case would leave him with no meaningful remedy. *Heath,* 560 F. Supp. at 844. It first found that § 1983's overarching policy of deterrence would not be achieved by relying on the wrongful death statute because "it would be far more profitable to kill the plaintiff than to scratch him." *Id.* at 844.

The court also found that declining to apply the limitations of Florida's Wrongful Death Act stemmed from an appreciation of the primacy of federal rights. *Id.* It noted that federal remedies were designed to supplement state remedies, and that § 1983 had an "independent vitality" that did not require state remedies to be first sought and refused before a federal remedy was invoked. *Id.* The Court concluded:

> At bottom, § 1983 was the product of a vast transformation in the concepts of federalism. The very purpose of § 1983 was to interpose the federal courts between the States and the people, as guardians of the people's federal rights—to protect the people from unconstitutional action under color of state law. This Court has neither the inclination nor the power to reverse that process in pursuit of formalistic symmetry. Considerations of deterrence and federal supremacy, as well as justice, require us to grant plaintiff's motion. Hereafter, the federal common law will govern any future assessment of damages in this case.

*Id.* at 844. (citation omitted).

Other courts analyzing similarly restrictive state survivorship and wrongful death laws have reasoned along similar lines. *See, e.g., McFadden v. Sanchez*, 710 F.2d 907 (2d Cir. 1983) (noting New York law which precluded recovery of punitive damages was "manifestly inconsistent" with federal law); *Davis v. City of Ellensburg*, 651 F. Supp. 1248 (E.D. Wash 1987) (holding that non-dependent parents of decedent could recover for violation of their son's

constitutional rights that caused his death, even though Washington survivorship statute precluded such relief, because such limitations were inconsistent with the goals of deterrence, compensation, and federal supremacy); *Weeks v. Benton*, 649 F. Supp. 1297 (S.D. Ala. 1986) (holding Alabama wrongful death law that prohibited recovery of compensatory damages and only allowed recovery of punitive damages was inconsistent with §1983); *O'Connor v. Several Unknown Correctional Officers*, 523 F. Supp. 1345 (E.D. Va. 1981) (holding Virginia statute which only provided compensation for beneficiaries and did not compensate defendant for underlying constitutional violation was inconsistent with § 1983).

Applying Florida's Wrongful Death Act to the facts of this case demonstrates why state law is inadequate to compensate §1983 plaintiffs who die as a result of constitutional violations. Howard was retired and not generating income that would have gone to his family or estate. Further, while Carolyn Howard may recover for her own emotional distress and loss of support and services from her husband under Florida's Wrongful Death Act, Defendants will seek to undercut those damages by pointing to the circumstances of Howard's arrest. Had the Defendants actions merely paralyzed Howard, but stopped short of killing him, there is no question that Howard would be able to recover for the loss of enjoyment of life that there actions caused. Howard's recovery of the most substantial loss caused by the Defendants' actions should not be cut short because their conduct was egregious enough to kill him.

Applying Florida's Wrongful Death Act to Howard's case conflicts with Eleventh Circuit precedent holding that federal law controls this issue and the underlying purpose of § 1983. As such, Plaintiff should be permitted to present evidence on and seek hedonic damages to compensate Howard for the loss of enjoyment of life.

**IV. Benevolent Gestures**

Defendant, defense witnesses, and defense counsel while in the presence of the jury, should be precluded from expressing apologies or sympathy apology or gratuitous comments by that they are "sorry" or otherwise sympathetic to the Plaintiff for the death of William Howard. Florida Statute § 90.4026 provides that benevolent gestures and statements expressing sympathy relating to pain, suffering, or death of a person involved in an accident and made to that person or a member of that person's family are not admissible in a civil action. Fla. Stat. § 90.4026 provides:

> (1) As used in this section:
>
> (a) "Accident" means an occurrence resulting in injury or death to one or more persons which is not the result of willful action by a party.
>
> (b) "Benevolent gestures" means actions that convey a sense of compassion or commiseration emanating from human impulses.
>
> (c) "Family" means the spouse, parent, grandparent, stepmother, stepfather, child, grandchild, brother, sister, half-brother, half-sister, adopted child of parent, or spouse's parent of an injured party.
>
> (2) The portion of statements, writings, or benevolent gestures expressing sympathy or a general sense of benevolence relating to the pain, suffering, or death of a person involved in an accident and made to that person or to the family of that person shall be inadmissible as evidence in a civil action.  Fla. Stat. §90.4026.

As such, the above statements are inadmissible under Fla. Stat. §90.4026. Furthermore, the above statements are irrelevant, immaterial to issues being tried and are simply an attempt to curry favor with the jury. Therefore, all the Defendants, their witnesses and counsel should be prohibited from making any such statements.

V.     **Recovery from Taxpayers**

In the instant case, the government of Orange County is a Defendant. As such, Plaintiff moves this Honorable Court to prevent all Defendants, defense witnesses, and defense counsel from arguing, implying or suggesting that any recovery to the Plaintiff would come from

taxpayers. Any such statements are merely an attempt to appeal to the jury's self-interest as taxpayers and are irrelevant, unduly prejudicial and immaterial. See *Stepanovich v. Bradshaw*, No.2:14-cv-270-PAM-MRM, 2017 WL 10084903 *1, at *2 (M.D. Fla, Feb. 03, 2017).

### VI. Financial Wherewithal of Defendants

In the instant case, there are several individually named Defendants in addition to the County. As such, the Plaintiff moves this Honorable Court to prevent all Defendants, defense witnesses, and defense counsel from arguing, implying or suggesting to the jury that the Defendants will be personally liable for any damages awarded to the Plaintiff. No reference should be made to the wealth or poverty of a party, nor should the financial status of one party be contrasted with any other party. *Brough v. Imperial Sterling Ltd.,* 297 F.3d 1172, 1178 (11th Cir., 2002).

### CONCLUSION

For the reasons described above, the Plaintiff's six motions in limine should be granted.

Respectfully submitted,

    /s/Drew Baskin
**HOWARD G. BUTLER, ESQ.**
Butler Law Group
Florida Bar No. 0503487
**DREW W. BASKIN, ESQ.**
Florida Bar No. 0109388
1506 Prudential Drive
Jacksonville, Florida 32207
(904) 398-2308 (phone)
(904) 398-3000 (facsimile)
hgb@butlerlawgroup.net
dwb@butlerlawgroup.net
CO-COUNSEL FOR PLAINTFF

-and-

    /s/ Jesse Wilkison
Wm. J. Sheppard, Esquire
Florida Bar No.:  109154
Matthew R. Kachergus, Esquire
Florida Bar No.:  503282
Bryan E. DeMaggio, Esquire
Florida Bar No.:  055712
Jesse B. Wilkison, Esquire
Florida Bar No.:  118505
Sheppard, White, Kachergus & DeMaggio, P.A.
215 Washington Street
Jacksonville, Florida 32202
Telephone:  (904) 356-9661
Facsimile:   (904) 356-9667
Email:   sheplaw@att.net
CO-COUNSEL FOR PLAINTIFF

17

## **CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that a copy of the foregoing has been furnished to the following by Electronic Mail this 26th day of April 2019.

**Dennis R. O'Connor, Esquire**
**Derek J. Angell, Esquire**
**O'Connor & O'Connor, LLC**
**840 S. Denning Drive, Suite 200**
**Winter Park, Florida 32789**

**Walter A. Ketcham, Jr., Esquire**
**Grower, Ketcham, Eide, Telan & Meltz, P.A.**
**901 N. Lake Destiny Road, Suite 450**
**P.O. Box 538065**
**Orlando, Florida 32853-8065**

**Gail C. Bradford, Esquire**
**William E. Lawton, Esquire**
**Dean, Ringers, Morgan & Lawton, P.A.**
**201 E. Pine Street, Suite 1200**
**P.O. Box 2928**
**Orlando, Florida 32802-2928**

          */s/ Jesse Wilkison*
          ATTORNEY