**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

CAROLYN HOWARD,

        Plaintiff,

v.                                   Case No:  6:17-cv-1473-Orl-40GJK

RICHARD WILKINSON, RICHARD
LEBLANC, RYAN WILSON, JAMES
NELSON, JUAN PADILLA, PENELOPE
GRAY, NANCY MENDOZA, RODNEY
MARTIN, ANDREA DISTIN-CAMPBELL
and ORANGE COUNTY FLORIDA,

        Defendants.

_____/

## <u>ORDER</u>

This cause is before the Court on Plaintiff's Motion in Limine to allow hedonic damages for Mr. Howard's loss of enjoyment of life; that is, his pain and suffering following the infliction of his injuries and up to the moment of his death. (Doc. 110, § III). Defendant Orange County has submitted their Response in Opposition to Plaintiff's motion for hedonic damages. (Doc. 119, § VIII). The Nurse and Officer defendants join in the County's opposition to Plaintiff's motion for hedonic damages. (Doc. 123, ¶ 1; Doc. 125, ¶ 1). Upon due consideration, the Court grants Plaintiff's motion to present the issue of hedonic damages to the jury.

**I.**    **THE ISSUE**

The issue before the Court is whether Florida's Wrongful Death Act, Fla. Stat. §§ 768.16, et. seq., and its exclusion of a remedy for the pain and suffering of a decedent, is inconsistent with the underlying policies of 42 U.S.C. § 1983.

## II.    RELEVANT FACTUAL BACKGROUND

A complete recitation of the facts of this case appears in the Court's Order on Summary Judgment. (Doc. 131). Only the facts pertaining to Mr. Howard's injuries, and the attendant pain and suffering sustained during the interval between the forcible removal of Mr. Howard from his cell and his demise are pertinent to the issue of damages presently before the Court.

### A.    Personal Injury of the Decedent

Mr. Howard, at the time a seventy-five-year-old man, was arrested for aggravated battery with a deadly weapon against his wife. (Doc. 94, ¶ 1). He was booked into the Orange County Jail and was disoriented and visibly agitated. (Doc. 94-4, ¶ 4; OCHS 09631-33). Following an evaluation, Mr. Howard was placed into a safety cell in the Acute Mental Health housing unit. (Doc. 94, ¶¶ 7-8). Medical personnel decided Mr. Howard should not be moved from the safe cell. (Doc. 78-4, p. 6; Doc. 94, # 19). The night-shift staff, however, decided to move Mr. Howard from his safe cell. (Doc. 78-5, 53:23-54:18).

After unsuccessfully attempting to coax Mr. Howard to the cell door to be handcuffed, the Officers entered the cell, and a flurry of action ensued. (Video 1; Video 2). Upon entry, Mr. Howard was huddled in the corner with his head physically touching the cell wall and his arms down. (Video 1; Video 2; Willis Affidavit, Exhibit H ("**Video 3**")). Officers LeBlanc, Wilson, and Wilkinson grabbed Mr. Howard, holding the back of his neck and each arm. (Video 1; Video 2). Mr. Howard grunted and moaned as Officers alternately yelled "don't move" and "put your arms behind your back." (Video 1; Video 2). After a brief struggle, one Officer said "takedown," and Officer Padilla repeatedly instructed "put him into prone." (Video 1; Video 2). Then, the Officers spun Mr. Howard

2

toward the front of the cell and slammed him headfirst into the ground, with Officer LeBlanc riding on Mr. Howard's back throughout the takedown, and straddling Mr. Howard once he was on the ground. (Video 1; Video 2; Video 3). Officer LeBlanc then handcuffed Mr. Howard. (Video 1; Video 2). While on the ground, Mr. Howard can be heard coughing, wheezing, and saying "I'm dead. I'm dead." (Video 1; Video 2).

Next, Officers moved Mr. Howard out of his safe book cell. While he continued coughing and wheezing, Officer Padilla directed the others to "assist him to his feet." (Video 2). With Mr. Howard's head hanging limp, Officers LeBlanc and Wilkinson propped him up with his knees touching the floor and torso held upright by Officers. (*Id.*). One of the Officers instructed Mr. Howard to "get up" and walk to a new cell. (*Id.*). Mr. Howard did not respond to this command, and his head and body remained limp. (*Id.*). Seconds later, Officer Padilla ordered Officer Wilson to "grab the legs." (Video 1). Then the Officers each grabbed an extremity and carried Mr. Howard's limp body—neck dangling from his shoulders—to a new cell a short walk down the hall. (*Id.*). There, Officer Padilla instructed Officers to "place him into prone." (*Id.*). The Officers put Mr. Howard face down on the floor, removed his pants and handcuffs, and left Mr. Howard naked on the cell floor with his hands still behind his back. (*Id.*). Mr. Howard lay on the cell floor unable to move his legs and struggling to move his arms after lying motionless for several minutes. (Video 2).

In the succeeding hours, regular cell checks continued but little changed. Officers LeBlanc and Wilkinson checked on Mr. Howard every thirty minutes until their shifts ended at 6:00 a.m. on November 19. (Doc. 78-5, 134:9–11; Doc. 78-16, 94:9–17). They observed that Mr. Howard remained on his back on the concrete floor where Officers left

3

him for the rest of their shift. (Doc. 78-5, 134:15–24; Doc. 78-16, 95:3–6). Likewise, Nurse Mendoza made repeated checks of Mr. Howard that night and did not observe him sit up or stand, rather he remained in a supine position all night. (Doc. 78-9, 53:16–54:6). The following morning, Nurse Gray visited Mr. Howard's cell and observed that he had been lifted onto his bead by corrections officers. (Doc. 78-3, 74:24–76:10; Doc. 94, ¶ 60). Mr. Howard related to Nurse Gray that he "hurt all over" and complained of neck pain. (Doc. 78-3, 77:7–13, 85:1–14). In a nurse progress note entered at 5:51 p.m., November 19, Nurse Gray reported that Mr. Howard was still laying in his bunk and continued complaining of neck and back pain. (Doc. 94, ¶ 63; OCCHS 09607).

By 7:00 p.m., Nurse Distin wrote in her progress note:

> Patient is supine on his bunk. Asked patient to sit up to take his medication and receive his eye drops. Patient assisted to sitting position by correct[ions] staff. Patient states that he can't sit up on his own or move his legs. . . . Moves bilateral upper extremities[] freely. Denies any pain. [Nurse Martin] updated on patient complaints.

(Doc. 94, ¶ 65; OCCHS 09605). Nurse Distin apparently did not take immediate action to address Mr. Howard's complaint that he could not move his legs, instead opting to relay the complaint to her supervisor. (Doc. 78-1, 37:14–38:1). At approximately 10:00 p.m., Nurse Distin found Mr. Howard unresponsive in his cell. (Doc. 94, ¶ 66). He was taken to the hospital by ambulance and died the next morning. (*Id.* ¶¶ 66–67). The medical examiner classified Mr. Howard's death as a homicide and concluded that it was "the result of hypoxic encephalopathy due to a neck fracture with cervical spinal cord trauma, which was due to blunt force." (Doc. 99-6, p. 4).

### III.    STATUTORY FRAMEWORK

The Florida Wrongful Death Act ("**FWDA**"), Fla. Stat. § 768.20, provides, in pertinent part, as follows:

> The action shall be brought by the decedent's personal representative, who shall recover for the benefit of the decedent's survivors and estate all damages, as specified in this act, caused by the injury resulting in death. When a personal injury to the decedent results in his death, no action for the personal injury shall survive, and any such action pending at the time of the death shall abate.

By contrast, "[c]ompensatory damages for deprivation of a federal right are governed by federal standards, as provided by Congress in 42 U.S.C. § 1988. . . ." *Gilmere v. City of Atlanta, Georgia*, 864 F.2d 734, 739 (11th Cir. 1989) (quoting *Sullivan v. Little Hunting Park, Inc.*, 396 U.S. 229, 239 (1969)). A damages award under § 1983 is intended to "compensate for the actual injuries caused by the particular constitutional deprivation." *Id.* (quoting *Memphis Comm. Sch. Dist. v. Stachura*, 477 U.S. 299 (1986)). The measure of damages should be "grounded in a determination of the plaintiff's actual losses." *Id.*

In providing the plaintiff in a § 1983 action complete compensation for his or her actual injuries caused by the constitutional deprivation, "both federal and state rules on damages may be utilized, whichever better serves the policies expressed in the federal statutes." *Id.* (quoting *Sullivan*, 396 U.S. at 240). Accordingly, § 1983 "enjoys a special prominence in our system of liberty. Its sweep is as broad as its language." *Heath v. City of Hialeah*, 560 F. Supp. 840, 843 (S.D. Fla. 1983) (quoting *Griffin v. Breckenridge*, 403 U.S. 88 (1971)).

The Supreme Court has long held that "there is no requirement that a state remedy be employed to compensate for a violation of a federal interest." *Gilmere*, 864 F.2d at 739. This is because "[t]he very purpose of § 1983 was to interpose the federal courts

between the States and the people, as guardians of the people's federal rights—to protect the people from unconstitutional action under color of state law."[1] *Heath*, 560 F. Supp. at 844 (quoting *Mitchum v. Foster*, 407 U.S. 225, 92 S.Ct. 2151, 32 L.Ed.2d 705 (1971)). This rule reflects the primacy of federal rights. *Id.*

## IV.    DISCUSSION

The FWDA is a creature of state law, and pursuant to the Act, a decedent's estate receives no compensation for the hedonic damages sustained by the decedent. In other words, the FWDA prevents or limits compensation for actual injuries caused by a particular constitutional deprivation, as mandated by § 1983, when those injuries include pain and suffering sustained as a result of a constitutional violation which happens to culminate in death. Thus, the FWDA creates an inconsistency between state law and federal statutory law. Courts have found state survival statutes to be inconsistent with the purpose of the Civil Rights Act of 1871, and have declined to apply those state statutes, where application of the state survival statute precludes recovery. *Guyton v. Phillips*, 532 F. Supp. 1154, 1165 (N.D. Cal. 1981) (internal citations omitted). In *Guyton*, the court followed the reasoning of the Supreme Court in *Robertson v. Wegmann*, 436 U.S. 584 (1978), and examined the state survival statute for inconsistency with federal law. The court held that California's survival statute, "insofar as it excludes recovery for pain and suffering, is inconsistent with § 1983." *Id.* at 1166. The same reasoning and conclusion apply to the FWDA.

---

[1]    The FWDA is contained within the Florida Statutes Chapter on Negligence, providing compensation for conduct vastly different from a constitutional violation.

6

To the extent that my learned colleagues have declined to follow the reasoning offered by the Court in *Heath*,[2] this Court is unpersuaded by the bases upon which those opinions rest. In *Estate of Breedlove v. OCSO*, 2012 WL 2389765 (M.D. Fla. June 25, 2012), the Court held:

> The Florida Wrongful Death Act, however, does not bar the entire personal injury claim. It merely excludes non-economic damages, while allowing the estate to recover the decedent's economic damages. This result is entirely logical given that non-economic damages are hard to quantify even when a victim survives. Moreover, the effect on compensation is, in most cases, modest. Here, the decedent did not live long enough after the fusillade to suffer. Accordingly, the Court cannot say that the mere exclusion of decedent's damages for pain and suffering makes the Florida wrongful death statute inconsistent with the compensatory purposes of § 1983.

Because the purpose of § 1983 is to provide compensation for actual damages—not a subset of those damages—the FWDA is inconsistent with the compensatory purposes of that federal law. Moreover, "[a]lthough the principles of compensation may be difficult to apply to a particular case, as the Supreme Court has recognized, courts 'are capable of making these types of judgment concerning causation and magnitude of injury necessary to accord meaningful compensation for invasion of [constitutional] rights.'" *Gilmere*, 864 F.2d at 740. Finally, as a practical matter, application of the federal common law over a patch-work of conflicting state survival statutes promotes consistency and advances the federal rights protected by § 1983. *See Gilmere*, *supra,* at 739-40 (electing not to apply the state wrongful death statute in part to promote consistency in the type and amount of damages awarded).

---

[2] The Court in *Degraw v. Gualtieri*, 2013 WL 3462332 (M.D. Fla. July 9, 2013), followed the reasoning of the Court in *Estate of Breedlove*.

## V.    CONCLUSION

For the foregoing reasons, it is **ORDERED AND ADJUDGED** that Plaintiff's Motion in Limine to allow a claim for hedonic damages, (Doc. 110, § III), is **GRANTED**.

**DONE AND ORDERED** in Orlando, Florida on May 21, 2019.

PAUL G. BYRON
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record

8